**Affirmed and Memorandum Opinion filed September 18, 2020.**



In The

# Fourteenth Court of Appeals

### NO. 14-20-00627-CV

**THE STATE OF TEXAS, Appellant**

**V.**

**CHRIS HOLLINS, IN HIS OFFICIAL CAPACITY AS HARRIS COUNTY CLERK, Appellee**

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-52383**

## MEMORANDUM OPINION

This is an accelerated appeal from an interlocutory order denying appellant's application for temporary injunction. Appellant, the State of Texas, contends the trial court abused its discretion in denying its application for temporary injunction. We conclude the State did not meet its burden of proof and affirm the order of the trial court denying the State's application for temporary injunction.

## I. Background

On August 25, 2020, the Harris County Clerk, Chris Hollins, posted a public message on the verified Twitter account of the "Harris County Clerk," stating that the Harris County Clerk's Office would be mailing every registered voter an application to vote by mail. Two days later, Keith Ingram, the Director of Elections for the Secretary of State, sent a letter to Hollins stating that Hollins's proposed plan constituted an abuse of voters' rights under Election Code section 31.005.[1] Ingram directed Hollins to "immediately halt any plan to send an application for ballot by mail to all registered voters."

Ingram and Hollins spoke by telephone on August 31 wherein Hollins informed Ingram he declined to conform to Ingram's request. On that same day, the State filed an application for temporary restraining order, temporary injunction, and permanent injunction in the district court seeking to prohibit Hollins from mailing out vote-by-mail applications to all Harris County registered voters. The State's complaint was that Hollins's proposed plan was an ultra vires act not connected to his official duties as the Harris County Clerk and that such conduct would result in irreparable harm to Texas citizens.

On September 9, 2020, the 127th District Court held a hearing on the State's

---

[1] Section 31.005 of the Election Code provides:

(a) The secretary of state may take appropriate actions to protect the voting rights of the citizens of this state from abuse by the authorities administering the state's electoral processes.

(b) If the secretary determines that a person performing official functions in the administration of any part of the electoral processes is exercising the powers vested in that person in a manner that impedes the free exercise of a citizen's voting rights, the secretary may order the person to correct the offending conduct. If the person fails to comply, the secretary may seek enforcement of the order by a temporary restraining order or a writ of injunction or mandamus obtained through the attorney general.

Tex. Elec. Code Ann. § 31.005.

application in which Ingram and Hollins both testified. During the hearing, the State argued that Hollins's proposal was outside the scope of Hollins's authority as early voting clerk and would cause confusion among voters, ultimately inducing some voters to commit felony voter fraud. Ingram testified that by sending the application to voters who might not qualify to vote by mail, the clerk was "walking them into a felony." Ingram explained that section 84.0041 of the Election Code provides that if a voter knowingly or intentionally submits false information on an application to vote by mail, that voter is subject to prosecution for a state jail felony. *See* Tex. Elec. Code Ann. § 84.0041. The State did not take issue with Hollins sending the applications to voters aged 65 years or older because, it argued, there is no chance of confusion with these voters as their age alone (with no other personal determination by the voter) qualifies them to vote by mail.[2] In response, Hollins emphasized the educational nature of the materials sent with the applications, specifically, the red-siren graphics accompanying a warning that, despite receiving the application, not all voters are eligible to vote by mail. Hollins's proposed mailer is depicted below:

---

[2] Section 82.003 of the Election Code qualifies all registered voters over the age of 65 on election day to vote by mail. *See* Tex. Elec. Code Ann. § 82.003.

3

Para recibir esta información o la Solicitud de Voto por Correo en Español, comuníquese con:

Để nhận được thông tin này hoặc Đơn Xin Bầu Cử Bằng Thư bằng Tiếng Việt, xin liên lạc:

要接收此信息或中英文的郵遞投票申請表格，請聯繫：

QUESTIONS? CONTACT:
✉ vbm@harrisvotes.com
☎ 713-755-6965



# HARRIS COUNTY CLERK
## S.A.F.E. ELECTIONS
SECURE · ACCESSIBLE · FAIR · EFFICIENT
OFFICE OF CHRIS HOLLINS

# DO *YOU* QUALIFY TO VOTE BY MAIL?



## READ THIS BEFORE APPLYING FOR A MAIL BALLOT

The Harris County Clerk's Office is sending you this application as a service to all registered voters.
**However, NOT ALL VOTERS ARE ELIGIBLE TO VOTE BY MAIL.**
**READ THIS ADVISORY TO DETERMINE IF YOU ARE ELIGIBLE BEFORE APPLYING.**



### You are eligible to vote by mail if:

1. **You are age 65 or older** by Election Day, November 3, 2020;
2. **You will be outside of Harris County for all of the Early Voting period** (October 13th - October 30th) **and on Election Day** (November 3rd);
3. **You are confined in jail but otherwise eligible to vote**;
4. **You have a disability.** Under Texas law, you qualify as disabled if you are sick, pregnant, or if voting in person will create a likelihood of injury to your health.
   - The Texas Supreme Court has ruled that **lack of immunity to COVID-19 can be considered as a factor** in your decision as to whether voting in person will create a likelihood of injury to your health, **but it cannot be the only factor.** You can take into consideration aspects of your health and health history that are physical conditions in deciding whether, under the circumstances, voting in person will cause a likelihood of injury to your health.
   - **YOU DO NOT QUALIFY TO VOTE BY MAIL AS "DISABLED" JUST BECAUSE YOU FEAR CONTRACTING COVID-19. YOU MUST HAVE AN ACCOMPANYING PHYSICAL CONDITION. IF YOU DO NOT QUALIFY AS "DISABLED," YOU MAY STILL QUALIFY IN CATEGORIES 1 - 3 ABOVE.**
   - It's up to you to determine your health status—the Harris County Clerk's Office does not have the authority or ability to question your judgment. **If you properly apply to vote by mail** under any of the categories of eligibility, **the Harris County Clerk's Office must send you a mail ballot.**
   - To read **guidance from the U.S. Centers for Disease Control and Prevention (CDC)** on which medical conditions put people at increased risk of severe illness from COVID-19, please visit: **www.HarrisVotes.com/CDC**

**If you have read this advisory and determined that you are eligible to vote by mail, please complete the attached application and return it to the Harris County Clerk's Office! Voting by mail is a secure way to vote, and it is also the safest and most convenient way to vote.**

**To receive CRITICAL ELECTION UPDATES, sign up at:** 🌐 **www.harrisvotes.com/text**

---

For Official Use Only: VUID #/County Election Pct #
1230000000/906

## APPLICATION FOR BALLOT BY MAIL

### CHRIS HOLLINS

COUNTY CLERK
ESTABLISHED 1836
HARRIS COUNTY, TEXAS

📝 **Fill in (or verify) your name and address**

☑️ **Select your reason for using Ballot By Mail**

☑️ **Select your Election(s)**

🖊️ **Sign your application, affix a stamp, and place in the mail**

*PROTECTING YOUR RIGHT TO VOTE*

**1** APPLICANT'S VOTER REGISTRATION:
Name/Address/City/State/Zip Code

JOHN Q. PUBLIC
123 MAIN STREET
HOUSTON, TEXAS 77078-0044

PHONE NUMBER:
(Optional)

PREFERRED MAILING ADDRESS
(REQUIRED FOR OUT OF COUNTY & IN JAIL):
Address/City/State/Zip Code

1230000000

SIGN YOUR APPLICATION: If you cannot sign, you must have a person witness your mark. If a person helped you fill out this application you must give the name of that person on the line immediately below your signature. In a single election, it is a Class A misdemeanor for any person to sign a ballot application as a witness for more than one applicant, unless the second and subsequent application are related to the witness as a parent, spouse, child, sibling, or grandparent. If you need additional information call the Texas Secretary of State at 1-800-252-8683. COMMON CONTRACT CARRIER: You may submit via a common or contract carrier which is a bona fide, for profit carrier.

**2** REASON FOR APPLYING FOR BALLOT BY MAIL:
____ Age 65 or older
____ Have a disability
____ **Outside the county throughout Early Voting & Election Day (Oct. 13 - Oct. 30, 2020 & Nov. 3, 2020)
____ Confined in jail
(**Dates You Will Be Outside the County: __/__/____ - __/__/____ )

**3** ELECTIONS FOR WHICH YOU ARE APPLYING:
____ ALL 2020 ELECTIONS
____ November 3, 2020

**4** I certify that the information given on this application is true, and I understand that giving false information on this application is a crime. **SIGN HERE X**
Signature of Applicant As Registered

**5** **OPTIONAL - FILL OUT THIS SECTION ONLY IF YOU _ASSISTED_ A VOTER WITH THIS FORM**
____ Check this box if acting as an ASSISTANT
X _____
Signature of Assistant
PRINT FULL NAME of Assistant
Assistant's Address of Residence or Title of Elections Official
Assistant's Relationship to Applicant

**6** **OPTIONAL - FILL OUT THIS SECTION ONLY IF YOU ARE A _WITNESS_ FOR A VOTER WITH THIS FORM**
____ Check this box if acting as a WITNESS
X FOR WITNESS: Applicant, if unable to sign, shall make a mark in the presence of witness. If applicant is unable to make mark, the witness shall check here _____.
X _____
Signature of Witness
PRINT FULL NAME of Witness
Witness' Address of Residence or Title of Elections Official
Witness' Relationship to Applicant

The mailer containing the application states, "DO YOU QUALIFY TO VOTE BY MAIL?" in large capital letters and bold font, and specifically instructs the voter to "READ THIS BEFORE APPLYING FOR A MAIL BALLOT." The mailer then lists the four categories of voters that are qualified to vote by mail pursuant to the Election Code. *See* Tex. Elec. Code Ann. §§ 82.001-82.004. The mailer explains the disability qualification by citing language from the Texas Supreme Court's opinion in *In re State*, 602 S.W.3d 549 (Tex. 2020). While Ingram commended Hollins on the informational nature of the mailer, stating, "I've read this full mailer and I think it's very good," he disapproved of including an application in the mailer.

The trial court denied the State's motion for temporary injunction. This interlocutory appeal followed.

## II. Analysis

### A. Applicable Law and Standard of Review

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Conrad Constr. Co., Ltd. v. Freedman's Town Pres. Coal.*, 491 S.W.3d 12, 15 (Tex. App.—Houston [14th Dist.] 2016, no pet.). "A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru*, 84 S.W.3d at 204. To obtain a temporary injunction, the applicant must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id*.; *Conrad Constr.*, 491 S.W.3d at 15. The applicant bears the burden of production to offer some evidence of each of these elements. *Conrad Constr.*, 491 S.W.3d at 15.

Whether to grant or deny a temporary injunction rests within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204; *Conrad Constr.*, 491 S.W.3d at 16. We should reverse an order on injunctive relief only if the trial court abused that discretion. *Butnaru*, 84 S.W.3d at 204.

## B. The State failed to meet its burden to prove "probable, imminent, and irreparable injury."

In its brief, the State articulates a single issue:

> For over a century, the Supreme Court has held that county officials have only those powers specifically granted or necessarily implied by the Legislature. Contrary to that well-established law, the trial court held that because no law forbids election clerks from sending unsolicited mail-in ballots, they must have authority to do so. The issue presented is whether this was a misinterpretation of the law and therefore an abuse of discretion.

The temporary injunction applicant, here the State, bears the burden to offer some evidence on each element of a temporary injunction. *Conrad Constr.*, 491 S.W.3d at 15. The State alleged the following to show harm: (1) inherent harm to the State in its sovereign capacity and (2) voter confusion leading to felony voter fraud. We address these in turn.

### 1. Harm in the Sovereign Capacity

The State argues that under *Yett v. Cook*, it need only establish that Hollins's plan would be ultra vires to establish an injury. *See Yett v. Cook*, 281 S.W. 837, 842 (Tex. 1926). *Yett* merely establishes that the State has standing to assert an ultra vires claim in a mandamus proceeding, not that an ultra vires action is harmful by its very nature. *See id*. at 220-221. The State also cites to *Texas Association of Business v. City of Austin*, for the proposition that its alleged ultra vires claim results in automatic harm to the State. *See Tex. Assoc. of Bus. v. City of Austin*, 565 S.W.3d 425, 441 (Tex. App.—Austin 2018, pet, denied). In that case,

the Austin Court of Appeals found the State would suffer harm if a proposed municipal ordinance that was directly preempted by a state law was put into effect. *See id*. at 441. There was no claim of ultra vires conduct in that case. We are not persuaded by the State's argument that ultra vires conduct automatically results in harm to the sovereign as a matter of law.

## 2. Voter Confusion

At the preliminary injunction hearing, Ingram testified that, "We don't allow or disallow counties to do anything. Counties are the ones that run elections in Texas, we assist and advise. The limited exception to that is whenever a county election official is abusing voters by misleading them and walking them into a felony." Thus, the State reveals its ultra vires argument is reduced to a single proposition: that the Harris County Clerk, by sending an informational brochure with an application to vote by mail, is misleading voters and potentially "walking them into a felony."

The thrust of the State's argument regarding harm resulting from voter confusion is that voters will be unable to follow the directions on the mailer, erroneously designate themselves qualified to vote by mail, and thus become subject to prosecution for felony voter fraud under section 84.0041 of the Election Code. *See* Tex. Elec. Code Ann. § 84.0041. The State emphasizes that the application sent by the Harris County Clerk (as opposed to applications sent by third-party groups, such as the League of Women Voters) connotes a certain level of official imprimatur that would lead voters to believe they have been sanctioned and approved to fill out the application. However, this argument supports the opposite conclusion. For example, when a voter sees an application sent by the County Clerk with its official imprimatur, red sirens, and directions regarding when a voter is and (more importantly) is not qualified to receive a mail-in ballot

7

(instructions that are not required to be sent with third-party unsolicited mail-in ballot applications), it is more likely a voter would know to take this application seriously, to read all warnings, and to follow all stated precautions.

Further, the testimony at the injunction hearing revealed that the Secretary of State's website itself does not define disability, leaving voters without guidance. Conversely, the mailer includes information that helps voters determine whether they are disabled under Texas law for the purposes of voting by mail, including important details about the Texas Supreme Court's ruling clarifying the qualifications for a disability that would allow a registered voter to vote by mail.

When the trial court asked Ingram how many Chapter 84 indictments had been prosecuted in the last 20 years, Ingram responded (on multiple occasions) that he did not know. Further, when the trial court questioned Ingram about the mens rea elements of section 84.0041, Ingram confirmed that a voter would need to act intentionally or with knowledge of his or her fraudulent conduct to be found liable under that section. A mere accidental misinterpretation of "disability," for example, would not subject a voter to liability. When Hollins's counsel questioned Ingram how a voter would knowingly and intentionally violate the statue given all the information on the mailer, Ingram replied:

> I don't know the answer to that question. I mean, for most voters, I agree this is sufficient, but not for all of them. And if they have the attitude, well, I'm not really disabled, but nobody is checking so I'm going to do it then that is exactly what 84.0041 is. And I've got the application in my hand and the Clerk sent it to me.

Ingram's response informs this court that "most" voters will have enough information to decide whether to apply to vote by mail, and only a select few, if any, will knowingly choose to break the law and falsify their application. A voter who intends to engage in fraud may just as easily do so with an application

8

received from a third-party as it would with an application received from the Harris County Clerk. Mr. Ingram testified at the hearing that, "definitely some mailers have that kind of language [regarding qualifications to vote by mail] on them but not all of them -- not very many of them." As discussed above, a voter would be less likely to engage in fraud using the application sent by the County Clerk because it has an official imprimatur, contains extensive explanations for what qualifies a voter to receive a mail ballot under the law, and is accompanied by text and red-siren graphics traditionally associated with danger and caution in general.

The State failed to meet its burden of showing that mailing the applications will result in irreparable injury. The injury alleged by the State is at best speculative. The State's argument is based on mere conjecture; there is, in this record, no proof that voters will intentionally violate the Election Code and no proof that voters will fail to understand the mailer and intentionally commit a felony, or be aided by the election official in doing so. Ingram's conclusory testimony at the temporary injunction hearing cannot carry the burden the State was required to prove to show actual harm. Conclusory testimony does not raise a genuine issue of material fact. *Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013) ("A conclusory statement of an expert witness is insufficient to create a question of fact to defeat summary judgment.") (internal quotations and citation omitted); *Davis v. Knott*, No. 14-17-00257-CV, 2019 WL 438788, at *9 (Tex. App.—Houston [14th Dist.] Feb. 5, 2019, pet. denied) ("A conclusory statement is one that expresses a factual inference without providing underlying facts in support of the conclusion.") (citing *Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008) and *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 & n.21 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding affidavit's statement that "this was false and defamatory and has injured me in my profession"

was conclusory)).

An injunction is not proper when the claimed injury is merely speculative; fear and apprehension of injury are not sufficient to support a temporary injunction. *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 861 (Tex. App.—Fort Worth 2003, no pet.). Accordingly, the trial court properly denied the State's application for temporary injunction.

Further, the temporary injunction applicant bears the burden of producing some evidence on each element of a temporary injunction. *Conrad Constr.*, 491 S.W.3d at 15. Because the State fails to produce evidence of irreparable injury, we need not address the State's arguments regarding cause of action or probable success on the merits. *See id*.

We overrule the State's sole issue.

## C. Judicial Non-Intervention

"The rule is well established in Texas that the equitable powers of the courts may not be invoked to interfere with public officials in taking any of the steps involved in an election." *Ellis v. Vanderslice*, 486 S.W.2d 155, 159 (Tex. Civ. App.—Dallas 1972, no writ) (citing *City of Dallas v. Dallas Consol. Elec. St. Ry. Co.*, 105 Tex. 337, 341–42, 148 S.W. 292, 294 (1912); *Leslie v. Griffin*, 25 S.W.2d 820, 821 (Tex. Comm'n App. 1930); and *Winder v. King*, 1 S.W.2d 587, 589 (Tex. Comm'n App. 1928). "The question is not simply whether a statutory contest is an adequate remedy for irregularities in the process. The question is rather whether the entire election process is immune from judicial interference until the result is declared. The above authorities establish that it is." *Id.* at 160.

### III.    Conclusion

Because we conclude the State failed to meet its burden in the temporary injunction hearing, we hold the trial court did not abuse its discretion in denying the State's application for a temporary injunction. Accordingly, the order of the trial court is affirmed.

PER CURIAM

Panel consists of Justices Spain, Hassan, and Poissant.