# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00429-CV

---

**Greg Abbott, in his official capacity as Governor of Texas; and Ken Paxton,
in his official capacity as Texas Attorney General, Appellants**

**v.**

**Harris County, Texas; Rodney D. Ellis, in his official capacity as a Harris County
Commissioner; and Janeana White, M.D., in her offiical capacity as
Harris County Local Health Authority, Appellees**

---

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-003896, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

## O P I N I O N

In this interlocutory appeal, Greg Abbott, Governor of Texas, and Ken Paxton, Texas Attorney General (collectively, the "State Appellants"), assert that the trial court (1) erred in denying their plea to the jurisdiction and (2) abused its discretion in issuing a temporary injunction in favor of the plaintiffs. The primary issue in this case is whether Governor Abbott, under his authority granted by the Legislature in the Texas Disaster Act, may issue an executive order that prohibits local governmental entities and officials in Harris County from requiring face coverings. The Harris County officials view face-covering requirements as necessary to mitigate the effects of COVID-19 and protect the public health within their jurisdictions; conversely, the Governor views the requirements as more restrictive than necessary. Because we conclude that

the trial court has subject-matter jurisdiction over the dispute and that it did not abuse its discretion in granting temporary-injunctive relief, we affirm the trial court's orders.

**BACKGROUND FACTS**

On March 11, 2020, Harris County Judge Lino Hidalgo issued a local disaster declaration for Harris County "to allow [the County] to take measures to reduce the possibility of COVID-19 and promote the health and safety of Harris County residents." *See* Tex. Gov't Code § 418.108 (authorizing "the presiding officer of the governing body of political subdivision [to] declare a local state of disaster"). On March 13, Governor Abbott, in his official capacity, issued a statewide disaster declaration, certifying that "the novel coronavirus (COVID-19) poses an imminent threat of disaster for all Texas Counties." *See id.* § 418.014 (authorizing governor to "declare a state of disaster" by executive order or proclamation). In the months that have followed, both Governor Abbott and Judge Hidalgo have continuously renewed their respective disaster declarations, and both declarations remain in effect. In addition, both the Governor and various Harris County local officials have issued orders designed to mitigate the threat posed by the COVID-19 pandemic.

On July 29, 2021, Governor Abbott issued the executive order that is the subject of this dispute, Executive Order GA-38 (GA-38). In relevant part, GA-38 states, "No governmental entity, including a county, city, school district, and public health authority, and no governmental official may require any person to wear a face covering or to mandate that another person wear face covering." GA-38 also states that it "supersede[s] any face-covering requirement imposed by any local governmental entity or official." In addition, relevant here, GA-38 purports to suspend several laws to "the extent necessary to ensure that local government

2

entities or officials do not impose any such face-covering requirements," including certain provisions in the Texas Disaster Act, pertaining to local officials' powers under the Act; Subchapter E of Chapter 8 and Chapters 121, 122, and 341 of the Texas Health and Safety Code; and "[a]ny other statute invoked by any local governmental entity or official in support of a face-covering requirement." Finally, GA-38 provides that "the imposition of any such face-covering requirement by a local governmental entity or official constitutes a 'failure to comply with' this executive order that is subject to a fine up to $1,000."

Both before and after Governor Abbott issued GA-38, local authorities in Harris County issued orders that require the wearing of face coverings under certain circumstances. On March 9 and August 17, 2021, Judge Hidalgo issued orders requiring, with certain exceptions, that all individuals wear face coverings in County buildings. On May 25, 2021, the Harris County Commissioners Court issued a similar order mandating that Harris County employees wear face coverings when inside County buildings for any purpose associated with their official duties. On August 12, the Harris County Local Health Authority issued an order requiring, with certain exceptions, that schools and licensed childcare centers in Houston and Harris County follow "Centers for Disease Control and Prevention (CDC) recommendations for universal masking" by requiring students, staff, teachers, and visitors to wear face coverings in school buildings and on school buses. There is no dispute that these orders violate the terms of GA-38, specifically, its ban on face-covering mandates.

On August 12, 2021, Harris County filed suit against the State Appellants in Travis County. Rodney Ellis, in his official capacity as a Harris County Commissioner, and Janeana White, M.D., in her official capacity as the Harris County Local Health Authority (collectively, with Harris County, the "Harris County Parties"), later intervened as co-plaintiffs.

3

In the suit, the Harris County Parties seek temporary and permanent injunctive relief to prevent the State Appellants from enforcing GA-38 "against any local governmental entity, or employee or official of a local government entity in Harris County" as well as declarations that the Governor acted ultra vires in issuing GA-38 and that GA-38 is unconstitutional, invalid, and unenforceable. According to the Harris County Parties, Governor Abbott acted ultra vires in issuing GA-38 because his "suspension of laws exceeds his authority under the Texas Disaster Act" and because his prohibition on face-covering mandates "impermissibly purports to supersede Harris County Commissioners Court's broad authority to set and enforce policies, rules, and regulations, over County employees."

In response, the State Appellants filed a general denial and a plea to the jurisdiction. In their plea, the State Appellants asserted that the Harris County Parties lack standing to challenge GA-38 because no credible threat of prosecution to enforce GA-38 has been alleged and because the suit is barred by sovereign immunity. On August 13, 2021, the trial court issued an order granting the Harris County Parties' application for a temporary restraining order, and on August 27, 2021, the court conducted an evidentiary hearing on the Plaintiffs' request for temporary injunctive relief. The trial court later signed orders granting the Harris County Parties' request for temporary injunctive relief and denying the State Appellants' plea to the jurisdiction.

On appeal, the State Appellants contend that the trial court erred in denying their plea to the jurisdiction, *see* Tex. Civ. Prac. & Rem. Code § 51.014(a)(4), and that it abused its discretion in granting the Harris County Parties' request for temporary injunctive relief, *see id.* § 51.014(a)(8). Because it implicates subject-matter jurisdiction, we will begin by reviewing the

4

trial court's ruling on the State Appellants' plea to the jurisdiction before considering the merits of their challenge to the temporary injunction.

**PLEA TO THE JURISDCTION**

A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject-matter jurisdiction without regard to whether the asserted claims have merit. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004*); Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Because whether a trial court has subject-matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex. 2004).

The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). In reviewing a plea to the jurisdiction, we begin with the plaintiff's live pleadings and determine if the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Miranda*, 133 S.W.3d at 226. In making this assessment, we construe the plaintiff's pleadings liberally, taking all assertions as true, and look to the plaintiff's intent. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, we may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id.* at 227; *Bland*, 34 S.W.3d at 555. That is, we review the evidence in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (citing *Miranda*, 133 S.W.3d at 221, 227-28). "Our ultimate inquiry is whether the plaintiff's pleaded and un-negated facts, taken as true and liberally construed with an eye to the pleader's intent, would affirmatively demonstrate a claim or claims

5

within the trial court's jurisdiction." *Brantley v. Texas Youth Comm'n*, 365 S.W.3d 89, 94 (Tex. App.—Austin 2011, no pet.).

In their plea to the jurisdiction, and now on appeal, the State Appellants argue that the trial court lacks subject-matter jurisdiction over the claims made by the Harris County Parties for two independent reasons. First, the State Appellants assert that the Harris County Parties' claims are barred by sovereign immunity and that the allegations and the evidence fail to demonstrate that their suit falls within the ultra vires exception. Sovereign immunity implicates a court's subject-matter jurisdiction and generally bars suits against the State or its subdivisions, absent a clear and unambiguous waiver of immunity by the Legislature. *Nazari v. State*, 561 S.W.3d 495, 500 (Tex. 2018). "In certain narrow instances, a suit against a state official can proceed even in the absence of a waiver of immunity if the official's actions are ultra vires." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017).

In this case, whether the Harris County Parties have sufficiently pleaded facts or presented evidence that would support a valid ultra vires claim for the purpose of demonstrating subject-matter jurisdiction overlaps with the substantive issue of whether the Harris County Parties have established a probable right to relief on their ultra vires claim for the purpose of obtaining temporary injunctive relief. For the reasons more fully set forth in that portion of our opinion discussing the trial court's grant of temporary injunctive relief, we conclude that the Harris County Parties met their burden of demonstrating a valid ultra vires claim. That is, we conclude that the Harris County Parties' pleadings, liberally construed, and the evidence submitted by the parties, viewed in the light most favorable to the Harris County Parties, demonstrate facts sufficient to show that the Governor acted without authority in issuing GA-38

to the extent it prohibits local governmental entities and officials from instituting face-covering requirements.

Second, the State Appellants argue that the trial court erred in denying their plea to the jurisdiction because the Harris County Parties lack standing to bring their claims. Standing is implicit in the concept of subject-matter jurisdiction, and subject-matter jurisdiction is essential to the authority of a court to decide a case. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Standing requires a "concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman*, 369 S.W.3d at 154. That is, to establish standing, the plaintiff must show that: (1) the plaintiff was personally injured, (2) the alleged injury is "fairly traceable" to the defendant's conduct, and (3) the alleged injury is "likely to be redressed by the requested relief." *Id.* at 154-55 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (Tex. 1992)). The State Appellants' standing challenge focuses on the third element of standing, that is, whether the Harris County Parties have demonstrated that their alleged injury is likely to be redressed by the requested relief. The State Appellants argue that the lawsuit will not redress any injury suffered by the Harris County Parties because, according to the Appellants, neither the Governor nor the Attorney General have any power to enforce GA-38. The State Appellants insist that only a local district attorney can prosecute a violation of GA-38 and that, therefore, they are the wrong defendants in this suit to enjoin enforcement of GA-38.

The Harris County Parties allege in their petition that "the likelihood of state enforcement against Harris County is high" and that "[t]he Attorney General has joined the Governor in stating that 'any local government official that defies [GA-38] will be taken to court.'" In addition, according to the Plaintiffs' allegations, "over the past year, the Texas

7

Attorney General has repeatedly sued local governmental entities that have instituted measures inconsistent with the Governor's executive orders." Moreover, publicly available records, including records filed in this Court in similar cases, reveal that the State Appellants have filed numerous lawsuits seeking to prevent local governments and school districts from enforcing local orders that, in their view, are invalid and unenforceable because they conflict with emergency orders issued by the Governor. *See* Tex. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute . . . ."); *State v. City of Austin*, No. 03-20-00619-CV, 2021 Tex. App. LEXIS 2651, at *1 (Tex. App.—Austin Apr. 8, 2021, no pet.) (mem. op.) (dismissing as moot appeal from denial of temporary injunctive relief where State sought to enjoin enforcement of local pandemic-related orders and to prevent local officials from issuing new orders more restrictive than GA-32); *State v. El Paso County*, 618 S.W.3d 812, 818 (Tex. App.—El Paso 2020, no pet.) (appeal from denial of temporary injunctive relief in lawsuit where State intervened and sought to invalidate local pandemic-related order on ground that it conflicted with GA-32); *see also In re Round Rock Indep. Sch. Dist.*, No. 03-21-00472-CV, 2021 Tex. App. LEXIS 7884, at *1-2 (Tex. App.—Austin Sept. 24, 2021, orig. proceeding) (mem. op.) (mandamus proceeding arising from lawsuit filed by State seeking to prevent school district from enforcing mask requirement on ground that it violates GA-38). Although those suits are not criminal-enforcement proceedings, the State plaintiffs in those suits seek to enforce the Governor's executive orders by striking down orders issued by local governmental entities to the extent the local orders conflict with or are more restrictive than the Governor's orders.

In this case, the Harris County Parties seek a declaration that the Governor's actions in issuing GA-38 are ultra vires. Thus, the Harris County Parties are not directly complaining about any threat of enforcement for non-compliance with GA-38, but about the

8

validity of the executive order itself. If the Harris County Plaintiffs are successful on their ultra vires claim, the declaratory and injunctive relief sought would allow them to exercise their authority to require the wearing of face coverings within their jurisdictions and would prevent the State Appellants from interfering with that authority. Based on the allegations in the Harris County Parties' pleadings, we conclude that there is a live controversy between the parties concerning the validity of GA-38 and that the declaratory and injunctive relief sought, if successful, would resolve this controversy. Accordingly, the Harris County Parties have affirmatively demonstrated that they have standing to assert their ultra vires claim against the State Appellants. Having rejected both of the State Appellants' jurisdictional challenges, we conclude that the trial court did not err by denying the State Appellants' plea to the jurisdiction.

We now consider the State Appellants' appeal from the trial court's grant of the Harris County Parties' request for temporary injunctive relief.

## TEMPORARY INJUNCTIVE RELIEF

"A temporary injunction is an extraordinary remedy that does not issue as a matter of right." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending trial on the merits. *Id.* To obtain relief, the party applying for a temporary injunction "must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable imminent, and irreparable injury in the interim." *Abbott v. Anti-Defamation League Austin, Sw. & Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (quoting *Butnaru*, 84 S.W.3d at 204)

9

The decision to grant a temporary injunction lies in the sound discretion of the trial court and is subject to reversal only for a clear abuse of that discretion. *Butnaru*, 84 S.W.3d at 204. A trial court abuses its discretion when it acts unreasonably or in an arbitrary manner or without reference to any guiding rules and principles. *Id.* at 211. When reviewing a temporary-injunction order, we view the evidence in the light most favorable to the order, indulging every reasonable inference in its favor, and "determine whether the order was so arbitrary that it exceeds the bounds of reasonable discretion." *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 857 (Tex. App.—Fort Worth 2003, no pet.). "The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision." *Butnaru*, 84 S.W.3d at 211.

To the extent our review of the trial court's temporary injunction turns on statutory construction, we review these issues de novo. *Cadena Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017). In construing a statute, our primary objective is to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). In making this determination, we construe the statute as a whole, rather than as isolated provisions, and we do not give an undefined term a meaning that is out of harmony or inconsistent with other provisions in the statute. *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002).

On appeal, the State Appellants argue that the trial court abused its discretion in granting temporary injunctive relief because (1) the Harris County Parties failed to establish that they are likely to prevail on the merits of their ultra vires claim, the substantive claim underlying their requests for declaratory and injunctive relief; (2) the Harris County Parties failed to

10

establish that they will suffer irreparable harm; and (3) the temporary injunction is not necessary to preserve the status quo and, instead, alters the status quo.

**Probable Right to Recovery**

While governmental immunity provides broad protection to the state and its officers, it does not bar a suit against a state officer for acting outside his authority, i.e., an ultra vires suit. *Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016). Suits alleging ultra vires or unconstitutional conduct by a government official "do not seek to alter government policy but rather to enforce existing policy" by compelling a government official "to comply with statutory or constitutional provisions." *City of El Paso v Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Plaintiffs bringing ultra vires claims must "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a ministerial act." *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Env't Quality*, 307 S.W.3d 505, 515 (Tex. App.—2010, no pet.) (quoting *Heinrich*, 284 S.W.3d at 372). "Ministerial acts" are those "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018) (quoting *Southwestern Bell Tel. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015)).

*The Texas Disaster Act*

The State Appellants assert that the Harris County Parties failed to establish a probable right to recover on their ultra vires claims because the Governor validly exercised his authority under the Texas Disaster Act when he issued GA-38, more specifically, that portion of GA-38 that prohibits local governmental entities and officials, such as Harris County Parties,

11

from "requir[ing] any person to wear a face covering or . . . mandat[ing] that another person wear a face covering."

Chapter 418 of the Texas Government Code, known as the Texas Disaster Act, establishes a detailed, comprehensive framework that, in the case of a disaster, allocates powers, duties, and responsibilities across various levels of state government and multiple agencies. *Ector Cnty. Alliance of Bus. v. Abbott*, No. 11-20-00206-CV, 2021 Tex. App LEXIS 7492, at \*3 (Tex. App.—Eastland Sept. 9, 2021, no pet.) (mem. op.); *see* Tex. Gov't Code §§ 418.001-.307. Among the stated purposes of the Act are to (1) clarify and strengthen the roles of the governor, state agencies, the judicial branch of state government, and local governments in prevention of, preparation for, response to, and recovery from disasters; (2) authorize and provide for cooperation in disaster mitigation, preparedness, response, and recovery; and (3) authorize and provide for coordination of activities relating to disaster mitigation, preparedness, response, and recovery by agencies and officers of this state, and similar state-local, interstate, federal-state, and foreign activities in which the state and its political subdivisions may participate. Tex. Gov't Code. § 418.002 ("Purposes").

The Act charges the Governor with meeting the "dangers to the state and people presented by disasters." *Id.* § 418.011. Under the Act, the Governor may declare a state of disaster within a defined geographic area "if the governor finds that a disaster has occurred or that the occurrence or threat of disaster is imminent." *Id.* § 418.014(c), (d). The declaration of a state of disaster "activates the disaster recovery and rehabilitation aspects of the state emergency management plan applicable to the area subject to the declaration." *Id.* § 418.015(a). "During a state of disaster and the following recovery period, the governor is the commander in chief of state agencies, boards, and commissions having emergency responsibilities." *Id.* § 418.015(c).

12

Among other powers, "[t]he governor may control ingress and egress to and from a disaster area and the movement of persons and the occupancy of premises in the area." *Id*. § 418.018.

The Act also authorizes the presiding officers of local governmental entities, such as mayors and county judges, to issue local disaster declarations. *Id*. § 418.108. "A declaration of a local disaster activates the appropriate recovery and rehabilitation aspects of all emergency management and furnishing of aid and assistance under the declaration." *Id.* § 418.108(d). Similar to that authority granted to the Governor, when a local disaster is declared the county judge or mayor of a municipality may also "control ingress to and egress from a disaster area under the jurisdiction and authority of the county judge or mayor and control the movement of persons and the occupancy of premises in that area." *Id.* § 418.108(g). In addition, as it relates to the pandemic, the county commissioners court is authorized by the Texas Health and Safety Code to adopt orders that are "reasonably necessary to protect the public health." *See* Tex. Health & Safety Code § 121.003.

In summary, the Act empowers and recognizes that the Governor may issue statewide disaster declarations and that certain local officials may also issue local disaster declarations. Nothing in the Act, however, suggests that these authorities are mutually exclusive, such that a disaster cannot simultaneously be both a statewide disaster and a local disaster. Moreover, it stands to reason that even a statewide disaster may have distinct and disproportionate impacts in each of the State's 254 counties and that, as a result, some measures for addressing a disaster in some counties may not be necessary or even appropriate in other counties. With this statutory framework in mind, we consider the primary legal issue presented by this appeal: whether the Governor, under his authority granted by the Legislature under the Texas Disaster Act, may prohibit local governmental entities and officials from implementing

13

measures that they view as necessary to mitigate the effects of a local disaster and to protect the public health and that, conversely, the Governor views as more restrictive than necessary to mitigate the disaster statewide.

*Analysis*

On appeal, the State Appellants argue that the Governor's authority under the Texas Disaster Act includes the authority to prohibit local governments from implementing measures such as face-covering mandates because the Act provides that orders issued by the Governor will preempt contradictory orders issued by local governments.[1] In support of their argument, the State Appellants point to several provisions in the Act that they contend demonstrate that the Legislature intended for such preemption to apply. Specifically, the State Appellants note that the Act (1) designates the Governor as "commander in chief" in addressing statewide disasters, Tex. Gov't Code § 418.015(c), and empowers the Governor to "control ingress and egress . . and the movement of persons and the occupancy of premises in the area," *id.* § 418.018(c), which would encompass indoor face-covering mandates; (2) provides that emergency-management directors, including the presiding officers of the governing body of a county, act as the "governor's designated agent[s]," *id.* § 418.015(a), (b); and (3) states that executive orders issued by the Governor under the Act have "the force and effect of law," *id.* § 418.012.

---

[1] In addition, the State Appellants argue that (1) the Texas Disaster Act places concrete limits on the Governor's authority to suspend statutes and, thus, does not violate the Texas Constitution's nondelegation doctrine; and (2) county judges and county commissioners courts do not have authority to violate state law. The Harris County Parties have not challenged the constitutionality of the Act, and there is no dispute that county officials do not have the authority to violate state law. Instead, the parties' dispute centers on whether GA-38 constitutes a valid exercise of the governor's authority under the Act such that it has "the force and effect of law." *See* Tex. Gov't Code § 418.012.

14

Based on the plain language of the Disaster Act, we do not agree that the provisions designating the Governor as "commander in chief" and emergency-management directors as the "governor's designated agents" demonstrate that the Legislature intended to empower the governor with broad authority to preempt local orders. As the Harris County Parties point out, the Act designates the Governor as "commander in chief of state agencies, boards, and commissions having emergency responsibilities," not counties, *see id.* § 418.015(c), and gives both the Governor and counties the same authority "to control ingress and egress," *see id.* § 418.018(c); *Abbott v. Jenkins*, No. 05-21-00733-CV, 2021 Tex. App. LEXIS 9460, at *24 (Tex. App.—Dallas Nov. 22, 2021, no pet. h.) (mem. op.) ("Thus, we must conclude section 418.015(c) limits the governor's authority to act as commander in chief only to specific state entities."); *Abbott v. City of San Antonio*, __S.W.3d__, No. 04-21-00342-CV, 2021 Tex. App. LEXIS 9129, at *18 n.5 (Tex. App.—San Antonio Nov. 10, 2021, no pet. h.) (analyzing whether action was valid under Section 418.016(a) and noting that governor failed to show how provisions designating him as "commander in chief" and granting him authority to "control ingress and egress" provide him with "power to prohibit local governments from adopting rules to promote public health within their jurisdiction during a disaster"). In addition, while the Act provides that "[a]n emergency management director serves as the governor's designated agent in the administration and supervision of duties," *id.* § 418.015(a), (b), nothing in this provision limits the authority that counties and local officials, including county commissioners courts, otherwise possess under the Act in responding to local disasters and public-health crises, *see Jenkins*, 2021 Tex. App. LEXIS 9460, at *30 (rejecting argument that Section 418.015 limits county judge's role to that of governor's agent and explaining that if county judge could only act

15

as governor's agent during statewide disaster, then "to avoid being surplusage, section 418.108 would need to state it does not apply in the event of a statewide disaster," but it does not).

In addition, we disagree that the use of the phrase "force and effect of law" demonstrates that the Legislature intended to give broad authority to the Governor to limit the ability of local governmental entities and officials to respond to disasters. The State Appellants argue that "because the Texas Legislature chose to imbue the Governor's Disaster Act executive authority with the same force and effect as state law, traditional preemption analysis applies." In effect, the State Appellants contend that the Legislature has delegated its authority to regulate counties to the Governor to create what our sister court in El Paso has characterized as a "tie breaker." *See El Paso County*, 618 S.W.3d at 821-822 (explaining that Section 418.012 is "a delegation of power from the Legislature to the governor" and that Legislature "inserted a tie breaker and gave it to the governor in that his or her declarations under Section 418.012 have the force of law"). However, in the same statute, the Legislature has expressly provided the Governor with a limited power to suspend provisions of "regulatory statute[s] prescribing the procedures for conduct of state business." Tex. Gov't Code § 418.016(a). To construe the phrase "force and effect of law" as broadly as the State Appellants suggest—as granting the governor absolute power to suspend or prohibit any order or regulation that, in his estimate, is unnecessary or overly restrictive in mitigating the disaster—would render this provision superfluous. *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."). Instead, we agree with our sister court in Dallas that "[S]ection 418.012 does not give the governor carte blache to issue executive orders empowering him to rule the state in any way he wishes during a disaster." *Jenkins*, 2021 Tex. App. LEXIS 9460, at *26.

16

The Disaster Act contains a specific provision to resolve conflicts between orders issued by county judges and mayors. *See* Tex. Gov't Code § 418.108(h) (providing that county judge's orders control over those of mayor when both use statutory authority to manage certain disaster-relief activities). In the absence of a similar clear and express provision in the Act to resolve conflicts between orders issued by the Governor and local governmental entities and officials, we cannot conclude that executive orders issued by the Governor under Section 418.018(c) automatically preempt any contrary local orders issued under Section 418.108(g).[2] *Jenkins*, 2021 Tex. App. LEXIS 9460, at *29 ("To conclude the governor owns the tiebreaking authority, we would have to ignore a stated purpose of the Disaster Act and provisions that delineate the responsibilities of the governor and county judges, among others."). Consequently, whether GA-38's prohibition on face-covering mandates exceeds the Governor's authority under the Act and constitutes ultra vires conduct turns on whether it falls within the scope of suspension allowed under Section 418.016(a).

---

[2] The State Defendants also argue that "[a] finding that GA-38 carries no preemptive effect would create mass confusion and collapse of the State's unified response to the challenges posed by the pandemic by turning dozens of state and local emergency orders into a flurry of non-binding recommendations." This is not a case, however, where the Governor's executive order directly conflicts with a local order such that a person subject to the orders could not possibly comply with both. *Cf. State v. El Paso County*, 618 S.W.3d 812, 822 (Tex. App.—El Paso 2020, no pet.) (explaining that there must be final decision-maker because "there could be good faith differences on the proper response"). Because GA-38 does not prohibit a person from wearing a face-covering, a person does not violate GA-38 by complying with a local face-covering mandate. Therefore, the issue before us is not whether there is a "tie breaker" when an order issued by the Governor and an order issued by a local governmental entity directly conflict. Nevertheless, to the extent preemption bears on the larger issue of whether the Governor can suspend or prohibit local orders with which he disagrees, we agree with Chief Justice Rodriguez, who explained, "Laws conflict with one another frequently, but there is no legal principle that automatically elevates certain laws above others as a matter of course. . . . Laws preempt other laws because constitutions and other foundational texts create conflict-of-law schemes that establish priority ranks among different types of valid law." *Id.* at 832-33 (Rodriguez, J., dissenting). Here, nothing in the Texas Constitution nor the Act gives the Governor's executive orders preemptive effect. *Id.* at 833 (Rodriguez, J., dissenting).

Section 418.016(a) of the Act provides:

> The Governor may suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business or the orders or rules of a state agency if strict compliance with the provisions, orders, or rules would in any way prevent, hinder, or delay necessary action in coping with a disaster.

Tex. Gov't Code § 418.016(a). The State Appellants argue that pursuant to Section 418.016(a), GA-38 validly suspends Section 418.108 of the Act and other statutory authorities pertaining to public health that the Harris County Parties relied on in issuing their respective face-covering mandates. Based on the plain language of the Act, we disagree.[3]

First, Section 418.016 authorizes the suspension of certain "regulatory statute[s]," and although the term "regulatory" is not defined in the Act, the term "regulate" ordinarily means "to govern or direct according to rule." Regulate, *Webster's Third New Int'l Dictionary* 1913 (2002); *see also* Regulate, *Black's Law Dictionary* (10th ed.) ("To control (an activity or process) esp. through the implementation of rules."). Under this definition, the statutes that the Governor purports to suspend are not "regulatory," but instead are "grant-of-authority statute[s] giving local authorities the leeway to act in their best independent judgment within the confines of their own jurisdictions." *El Paso County.*, 618 S.W.3d at 839-40. For example, Section 418.018, the cited basis for County Judge Lina Hidalgo's order requiring face coverings, empowers local government officials to declare a local state of disaster and to take certain appropriate action but does not direct or require that the local official take any particular action. *See* Tex. Gov't Code § 418.108.

---

[3] The Governor does not contend that Section 418.016(a) authorizes him to suspend the local orders at issue directly, as there can be no dispute that the orders issued by the Harris County Parties are not "statutes." *See* Statute, *Black's Law Dictionary* (10th ed.).

18

In addition, Section 418.108 and the other statutes that GA-38 purports to suspend under Section 418.016 do not pertain to "conduct of state business," but instead concern the authority of local governments to react to local disasters and address local public-health concerns. We agree with our sister court of appeals in San Antonio that "[i]f the Legislature had intended Section 418.016(a) to reach the ordinances and business of local governments, Section 418.016(a) would have stated an application to 'political subdivisions' or 'local governmental entities,' which are terms defined in the Act." *City of San Antonio*, 2021 Tex. App. LEXIS 9129, at *15-16.

In summary, we conclude that the Governor does not possess absolute authority under the Texas Disaster Act to preempt orders issued by local governmental entities or officials that contradict his executive orders. Further, the Governor's authority to suspend certain statutes under Section 418.016 does not include the authority to suspend Section 418.108 or other public-health statutes relied on by the Harris County Parties in issuing their respective face-covering requirements. The trial court reasonably concluded that the Harris County Parties have a probable right of recovery on their ultra vires claim.

**Irreparable Harm**

The State Appellants also argue that the trial court abused its discretion by issuing temporary injunctive relief because the Harris County Parties failed to establish that they will suffer irreparable harm. Specifically, the State Appellants complain that the witnesses presented at the temporary-injunction hearing for the Harris County Parties could not "tie a rise in local COVID-19 rates to GA-38's ban on face-covering mandates." In addition, they argue that the trial court failed to properly "weigh the countervailing interests against Harris County's request

19

for injunctive relief." *See NMTC Corp. v. Conarroe*, 99 S.W.3d 865, 868 (Tex. App.—Beaumont 2003, no pet.) ("An application for injunction is a request that a court exercise its equitable jurisdiction, and in exercising that power the court balances competing equities."). Based on the evidence presented at the temporary-injunction hearing, we disagree.

At the hearing, the trial court heard testimony from two witnesses—Dr. Janeana White, Local Health Authority for Harris County and medical advisor to the County, and David Berry, Harris County Administrator to the Commissioners Court. Dr. White testified that COVID-19 is a respiratory virus that "has been catastrophic" across the globe; recently, the highly contagious delta variant has contributed to a "fourth wave in the Harris County area," meaning there has been a significant increase in the positivity rate; and hospitals and the health care facilities in Harris County have been overwhelmed due to a 305% increase in hospitalizations due to COVID in the month before the hearing. Dr. White also explained that despite mitigation efforts such as vaccines, physical distancing, and handwashing, as of the hearing date, there had been 479,547 cases of COVID and 5,232 deaths from COVID in Harris County and that the positivity rate was currently 21%. Finally, Dr. White testified that based on guidance from the CDC and on published scientific articles, which were admitted into evidence at the hearing, she determined that the imposition of a face-covering mandate would be effective in mitigating the community spread of COVID-19 and in decreasing the number of hospitalizations and deaths due to COVID in Harris County. Dr. White explained that the Governor of Kansas had issued an executive order requiring masks in public spaces with the ability to opt out and that studies on the effectiveness of that mandate had shown that the counties that opted out saw an increase in COVID relative to those counties that did not.

20

Berry testified as to the economic impact of COVID on the County. In part, Berry explained that as a self-insurer under the workers' compensation system, the County has paid over $3.8 million in COVID-related healthcare costs in 2021 due to employees contracting COVID and that the County has lost occupancy tax revenue as a result of events being cancelled due to COVID. Berry also testified about the negative impact that COVID has had on county operations. For example, according to Berry's testimony, there was an outbreak at a juvenile detention facility, which required the County to "evacuate out a large number of personnel and place these young adults and children on a no-movement policy," meaning they could not access therapy, see visitors, or appear in court.

Based on the evidence presented at the hearing, viewed in the light most favorable to the trial court's order, we conclude that the Harris County Parties sufficiently demonstrated that the use of face coverings is an effective tool in controlling the spread of COVID-19; the ability to require the use of face coverings in certain settings is especially helpful; and the uncontrolled spread of COVID-19 is detrimentally impacting the health of citizens and county operations. Because GA-38, by its terms, prevents local governmental entities and officials like the Harris County Parties from enforcing local orders requiring the use of face coverings, it inflicts irreparable harm on these entities and officials. *See Texas Ass'n of Bus. v. City of Austin*, 565 S.W.3d 425, 441 (Tex. App.—Austin 2018, pet. denied) (explaining that "inability [of state] to enforce its duly enacted [laws] clearly inflicts irreparable harm," quoting *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018)). Conversely, the State did not present any evidence to show how the State would be adversely impacted by the requested temporary injunction. The trial court reasonably determined that the Harris County Parties would suffer "probable imminent,

21

and irreparable injury" if interim relief were not granted. *See Anti-Defamation League Austin, Sw. & Texoma Regions*, 610 S.W.3d at 916.

**Status Quo**

As previously discussed, the purpose of a temporary injunction is to preserve the status quo. *Butnaru*, 84 S.W.3d at 204. In this context, "status quo" means "the last, actual, peaceable, non-contested status which preceded the pending controversy." *Texas Ass'n of Bus.*, 565 S.W.3d at 437 (quoting *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding)). The State Appellants argue that "the last, actual, peaceable, non-contested status which preceded the pending controversy" was GA-36, which was issued in May 2021 and, like GA-38, prohibited local governmental entities and officials from imposing face-covering mandates. Thus, the State Appellants reason that the status quo has existed at least since May 2021, at which time there was no active dispute between the parties, and that the temporary injunction sought and obtained by the Harris County Parties does not preserve the status quo of the litigation's pending subject matter but instead "upends" it.

We have already concluded that the trial court did not abuse its discretion by determining that the Harris County Parties established a probable right to relief on their claim that the Governor's issuance of GA-38 constitutes an ultra vires act to the extent it prohibits local governmental entities and officials from issuing face-covering mandates. "Continuation of illegal conduct cannot be justified as preservation of the status quo." *In re Newton*, 146 S.W.3d at 651. If GA-38 is determined to be ultra vires and invalid, GA-36 would be ultra vires and invalid for the same reason. Consequently, GA-36 cannot constitute the "status quo" as a matter of law. Instead, the temporary injunction as requested and granted by the trial court seeks to

return the parties to the position they were in prior to the Governor's ultra vires actions. The trial court reasonably concluded that a temporary injunction would preserve the status quo. Moreover, having rejected the State Appellants' arguments, we conclude that the trial court did not abuse its discretion by imposing a temporary injunction to prevent the State Appellants from seeking to enforce GA-38 pending a trial on the merits.

## CONCLUSION

We affirm the trial court's orders denying the State Appellants' plea to the jurisdiction and granting the Harris County Parties' request for a temporary injunction.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: January 6, 2022